And we turn to our final case of the day, Appeal No. 23-3256, U.S. v. Rush. All right, Mr. Newton is ready, but all right, go right ahead. Thank you, Your Honor. Good morning. May it please the court, opposing counsel, my name is Talmadge Newton. I appear today on behalf of Mr. Rush. The appellant, who has never previously been convicted of a felony, was charged and convicted in this case with the single count of possession of a short-barreled rifle, which was not properly registered to him in the National Firearms Registry. The plain text of the National Firearms Act, 26 U.S.C., Section 5861D, categorically burdens the appellant's rights under the Second Amendment. The means-end scrutiny analysis set forth in Miller has been set aside by the Supreme Court in New York State Rifle and Pistol Association v. Bruin. Bruin clearly abrogates all means-end frameworks and requires fresh examination of the National Firearms Act under Bruin's two-part test. Bruin announced a new two-part test under the Second Amendment for firearms cases. Under the first step, the question is whether the Second Amendment's plain text covers an individual's conduct. In this case, Mr. Rush was a protected person under the Second Amendment. He was not in any way prohibited from owning a firearm prior to this case. The question, in hottest contention in this case, becomes the question of whether the arm, the firearm that he was carrying in this case, is protected, and whether or not the appropriate analysis of that firearm and its characteristics belongs under the first prong of the Bruin analysis or the second prong of the Bruin analysis. I will acknowledge, and I did in the briefs, this court's panel holding in Bevis v. the City of Naperville, where the court seemed to suggest that the proper analysis does occur in the first step. I believe other courts, including a panel in the Ninth Circuit, have held otherwise, that the appropriate analysis is in the second step. I think that is important, and why it is such a key question is because if the analysis of whether it is a covered arm is part of the second step, the burden belongs to the United States to prove that convincingly. In this case, I believe that the district court failed to analyze the Bruin analysis correctly, that it improperly relied on Miller, which is no longer good law. But counsel, you're going to the Bruin analysis, which I want to give you time to do, but at least the way I'm looking at it, the first thing we need to decide, you're giving us a lot of reasons to overrule Miller, but is that something we do before the Supreme Court does it? Your Honor, yes. I believe that in Bruin, the Supreme Court announced that prior precedents that in any way use a means-end analysis to analyze the Second Amendment are out. I do not believe that this court can rely on Miller because I believe that Bruin has abrogated Miller. So it is my position and the position of the appellant, Mr. Rush, that it is appropriate to enter the Bruin analysis on this question. What about Heller? I mean Bruin explicitly said that Heller still remains good law. And so in Heller, the Supreme Court referred to not only to Miller, but the fact that arms like short-barreled shotguns just don't come within the definition of arms as protected by the Second Amendment. And I appreciate that, Your Honor, and I understand the timing here, and I understand that Bruin did preserve and certainly reference portions of Heller and Miller and their prodigy. I believe, though, what has happened is a seed change, that what the Supreme Court in Bruin really did is said that the entire framework needs to be reanalyzed. And that's not to say that certain logic and rationale from Miller is not going to come under this new analysis, that a new court could come in and say yes. For the same reasons that Miller and the court in Miller found that short-barreled shotguns are outside of the common use or that they are dangerous and unusual, we too find that. But Bruin reset the test, and they said you can't go about it the way that courts prior to Bruin did it, and that includes Heller and Miller. You have to use this new test, and that is this two-part test. And so what is your proposed definition of arms then? For purposes of the first part of the test, Your Honor, I think it's, is it a firearm? And I think that that would include short-barreled rifles. And that's it, just point blank, whether or not, whether or not it's a firearm? Yes. Gatling guns, machine guns, as the court has cited in earlier things, things that clearly have no civilian application are still firearms. I think that the… So you would take out of that things that have military, only military application? No, Your Honor, I think that if it is a firearm, it survives the first prong of the test. Well, then why on earth is Bruin talking about common use for lawful purposes of self-defense? What's all that about then? I think that that goes into the second prong, Your Honor, where the court's going to look at the historical tradition. And I think that that's where you get the guns analogous to machine guns or some of this military weaponry is not going to survive that scrutiny. Is the turret of a tank a firearm? I'm not a munitions expert, Judge, but I do appreciate the sensibility of the question. I don't believe anybody is advocating for machine guns and tanks to go into civilian use. But I think that the… But your position is it would survive that first step. My position is that the test that the United States Supreme Court established in Bruin and all of the problems it has caused, as this court has seen from its litigation and its sister circuit litigation, has required a reexamination of the entire framework. So I believe that, yes, that should be a question for the second step of the framework. But as Judge Lee asked, when you're just talking about the first step, you're saying firearms. So turret of a tank survives the first step. I think that if it is a – I understand, Your Honor, and I don't intend to seem inflexible by not yielding any ground. But I think that there has to be an analysis of whether it is a firearm in that first prong. And I believe that that first prong analysis is exceptionally broad, that the narrow focus, the real scrutiny of the historical tradition comes into the second prong analysis.  Okay. Heller says, Miller stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons. Heller did not abrogate that language. Heller is saying Miller still stands for that proposition. The Second Amendment extends to only certain types of weapons. How do we square what the court has said in Heller, which the court did not step away from in Bruin, with your definition of firearm? First step just means firearm. Every firearm. Not certain types of firearm. Every firearm. Yes, Your Honor. I think that what Bruin did is it set aside any test or any law that was based on a means-end analysis. And I think that that's what supports my argument regarding moving directly to the Bruin test, that anything that is, you know, premised on this means-end analysis, A, because of B, has to be reexamined. And I'm not… That's not a means-end statement. I know, but the… That I read. It's a statement about what is covered in the definition of arm. Yes, Your Honor. I understand. I don't have a more specific answer to your question, I'm afraid. Okay. So if there are no remaining questions, I will reserve the rest of my time. Okay. Mr. Leggins, am I pronouncing it correctly? You're pronouncing it correctly. Okay. Thank you. Good morning, Your Honors. My name is Tom Leggins, and I represent the United States in this appeal. With all due respect to counsel, I do not agree with his assessment of Miller that it is a means-end test. It is whatever you want to say about it. It is still a text-in-history opinion. Judge McReynolds goes through a pretty detailed, actually, historical analysis of the Second Amendment as it should apply to the National Firearms Act. So at the outset, I want to make clear that I disagree entirely with counsel's premise that Miller is a means-end test, which this Court is just allowed to overlook. Well, I think that, you know, Mr. Newton does have a point to the extent that so many courts are struggling with brewing, right? And I think the struggle comes in the fact that, number one, both Step 1 and Step 2 require some historical analysis, right? And to some extent, even, I think Mr. Newton's argument, even Step 1, whatever we may think of Miller, has some means-s flavor to it, right? Because we're looking at is it a lawful ends, right? Is it a means to something that a lawful citizen would have to a common citizen as opposed to the military? Those kind of echo kind of a means-ends type of framework, which in Bruin the Court disavowed. They're just – my only point is there's just a lot of overlap and fuzziness between Steps 1 and 2 to some extent. And, you know, the Court's not the only one who struggles with these particular issues. The – I think the – if this Court follows the government's position that Miller is controlling, you don't even reach Bruin, which may be a saving grace, at least in this case, because if Miller controls, if this Court is not free to apply Miller's holding to a short-barreled rifle, then that ends the inquiry. Now, I understand that this Court probably, as the Court did in Bevis, is going to nevertheless want to more fully expand on the types of issues that is concerning this Court this morning. But moving on from Miller, I think even if you look at a Bruin analysis as to the questions Your Honor had, I mean, what are arms? And really, it doesn't matter – I don't think it matters who has a burden of proof in this case. I think the way that Justice Scalia construed arms in Heller, which Bruin did nothing to overturn, and the way this Court construed Bruin and Heller in Bevis, then the arm at question here does not qualify for protection under the Second Amendment. What we are left with is the notion that the Second Amendment only protects those arms in common use for the purpose of self-defense. And the defendant has failed to establish that with regard to the two short-barreled rifles. There is a long history of outlawing short-barreled rifles in this country for very good reason. They're not useful for self-defense. A person could use one for self-defense, but they're not in common use for self-defense. Their main utility is that they can be concealed and that they have a large amount of power compared to an ordinary rifle. This was a sawed-off AR-15. It shoots at – How would a plaintiff, or I guess here a defendant, make the showing that something is in common use for self-defense? I guess that gets to an issue that conceptually I have had to run around in my head with also, is that ultimately who decides what is in common use for self-defense? I think this court made a great effort at resolving that question in Bevis when this court said that the dividing line is military versus non-military. I'm not sure that that's where the issue will ultimately end up. Right now it appears, at least in this circuit, to be a legal standard in that the court makes that determination of what is in common use for self-defense. I'm not sure it's always going to remain that way, but right now that appears to be the law. I want to marry that with your statement earlier that it doesn't matter who has the burden of proof because if we find that Mr. Rush did not make that showing that short barrel rifles are lawful and commonly used lawfully for self-defense, how do we marry that with your statement just now that that is perhaps a court finding? Well, right now, I was in agreement with Judge Lee's observation that there are some conceptual problems. The way the law stands now, the defendant has to . . . the defendant bears that burden. The defendant has to show, according to this court in Bevis, that it is in common use for self-defense. And our position is he failed to do that for all of the reasons I go on for ad infinitum in our brief. So as it stands now, it's our position this court should affirm on the basis of Bevis because Judge Wood in Bevis said that the defendant bears this burden and it is our position that he has failed to meet this burden. But your earlier answer to my question is you don't know how he would meet the burden, but he hadn't done it. Is that your position? Yes, that whatever that burden is. Well, he would have had to have presented evidence at some point consistent with Bevis or he would have had to have made arguments in this court consistent with Bevis. And with all due respect to counsel, his argument is not that here's why I went under Bevis. His argument is you guys decided Bevis wrong and it is our position that that's not what happened or at least that this court should not do that. Bevis applied the framework that was dictated by Heller. This court took a look at Judge Scalia's opinion in Heller and the opinion in Bruin and the standard is that the Second Amendment protects those arms that are in common use for the particular purpose of self-defense. And the defendant is not arguing before this court today that a sawed-off rifle is in common use for the particular purpose of self-defense. He's urging this court to find that Bevis applied the wrong standard. And on that basis, we believe that the court in Bevis got the Heller standard right and that this court should affirm in this case because of Bevis. Or we don't even think you even have to reach the Bruin analysis again because of the Miller test that we spent the first several pages of our brief going through. So if there are no further questions from the court, I will yield the rest of my time and thank you. Okay, thank you. Mr. Newton, we'll give you your three minutes. Thank you, Your Honor. Your Honor, just for purposes of clarity, I do believe that the appellant, Mr. Rush, did argue and has demonstrated that the firearm used in this case, the short-barreled AR-15, was in common use and was held for purposes of self-defense. And I don't believe that there is any information on the record to suggest otherwise. Well, that's two different things, that it was in common use and then you say for him it was for self-defense, but the standard that we have to be mindful of is common use for self-defense. Yes, Your Honor, and I think we've alleged… Did you make that showing? I believe we've said that as well, Your Honor. We cite to statistics in the brief that some 500,000-plus of these short-barreled AR-15s… That, to me, were statistics showing common use, period, not common use for self-defense. How do we get the self-defense part from the bare statistics you did cite for us in the brief? I understand, Your Honor. I think that he has made that allegation that he was using it for self-defense. I believe that there's been no evidence deduced otherwise that he was not using it for self-defense. I believe it is that which gets me in part to the second prong of the test, which shifts the burden to the government to show that it is outside of the historical context of regulations on the Second Amendment. And how do you succeed on that part? I believe that in the brief, Your Honor, we've cited numerous historical analogies to this type of short-barreled rifle that show that it was commonly possessed by people, that there were not sufficient regulations. That comes down to the historical argument we're seeing in all of these cases of a pile of cases in column A, a pile of cases in column B, and then the government and the defense bar going at each other to parse out the differences between them. But I do believe that Appellant Rush has set forth a number of examples that show that analogous weapons were in use back at the founding and at the time of the Second Amendment. And not regulated. And not regulated, yes, Your Honor. So if there are no further questions at this point, I would ask the court to reverse the conviction in this case, remand the matter to the district court to allow Mr. Rush to withdraw his guilty plea, and instruct the district court to dismiss the indictment on the basis set forth here today. Okay. Thank you. Thank you, Mr. Leggins, Mr. Newton. And we'll take the case under advisement. We're done for the day.